UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| C, by and through his parents and next friend, MIKE AND MELISSA CONNOR, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. 4:08CV1853 HEA |
| MISSOURI STATE BOARD OF EDUCATION, et al., | ) ) ) | |
| Defendants. | ) ) | |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Defendants Missouri State Board of

Education, Missouri Department of Elementary and Secondary Education, State

Schools for the Severely Handicapped's, Motion to Dismiss, [Doc. No 9]. Plaintiff

opposes the motion. For the reasons set forth below, the Motion is granted in part

and denied in part.

Plaintiff, by and through his parents and next friend, Mike and Melissa

Connor, filed this Complaint against Defendants State of Missouri, Missouri State

Board of Education, Missouri Department of Elementary and Secondary Education,

State Schools for the Severely Handicapped, and Dunklin R-V School District

seeking injunctive and monetary relief under the Individuals with Disabilities

Education Act, 20 U.S.C. § 1400 et seq. ("IDEA"), Section 504 of the

Rehabilitation Act, the Americans with Disabilities Act ("ADA"), and 42 U.S.C. § 1983 for violations of the Equal Protection Clause of the United States Constitution. Three defendants, Missouri State Board of Education, Missouri Department of Elementary and Secondary Education, and State Schools for the Severely Handicapped, collectively herein referred to as "State Defendants," have moved to dismiss for lack of subject-matter jurisdiction, pursuant to Fed.R.Civ. Rule 12(b)(1), for failure to state a claim, pursuant to Fed.R.Civ. Rule 12(b)(6), or in the alternative to make more definite and certain under Fed.R.Civ. Rules 8 and 10.

## Facts and Background

Plaintiff's Complaint alleges the following facts[1]: Plaintiff is a severely handicapped individual who has been diagnosed with Spastic Quadriplegic Cerebral Palsy, secondary to Microcephaly and Lissencephaly, and Cortical Visual Impairment, Plaintiff has attended Mapaville State School for the Severely Handicapped,[2] ("Mapaville"), since January, 2005.

---

[1] The recitation of the facts is taken from Plaintiff's Complaint and is set forth for the purposes of this Motion only. It in no way relieves the parties of the necessary proof of these facts later in this proceeding.

[2] On August 28, 2008, the State Schools for the Severely Handicapped was renamed the Missouri Schools for the Severely Disabled. Mo.Rev.Stat. § 162.730; L.2008, H.B. No.1807, § A. Because the parties refer to this defendant as "State Schools for the Severely Handicapped," the Court will likewise refer to this Defendant in the same manner.

Mapaville is one of several State Schools for the Severely Handicapped ("State Schools"). The State Schools are operated by the Missouri Department of Elementary and Secondary Education ("DESE"), the state agency responsible for accreditation and management of public schools in Missouri, including Mapaville. The Missouri State Board of Education ("State Board") is responsible for supervising instruction in all public schools in Missouri. Dunklin R-V School District is a public school district.

The Complaint further alleges that during the time Plaintiff was a student at Mapaville, he was neglected on a regular basis to sit without interaction. His Individualized Education Programs, ("IEPs") were not implemented in material and significant part. Mapaville has materially failed to implement necessary and critical components of Plaintiff's educational program, as he has been subjected to oral and physical abuse and neglect at school. Further, Plaintiff alleges that Defendants collectively have failed Plaintiff and have violated their obligations to him through a persistent pattern of profound incompetence, willful neglect, gross misjudgment, and reckless indifference to his rights.

Plaintiff alleges Mapaville's inadequacies are systemic. Staff are unsupervised and unaccountable for their failures to effectuate IEP goals or otherwise treat the students with human dignity. Mapaville's chronic inadequate

supervision, staff apathy, lack of training, underskilled service providers, undertrained teachers and aids and untended classrooms have resulted in a trivial and meaningless education for Plaintiff. Plaintiff contends these inadequacies, along with Defendants' failure to develop and implement Plaintiff's IEPs, have denied Plaintiff a free appropriate public education.

Plaintiff sought relief through the administrative process provided by the state of Missouri. At the beginning of the hearing, the Chief Hearing Officer granted the school's "Motion for Summary Judgment: on the sole ground that, categorically, under any circumstances, audio/visual monitoring is not "appropriate relief" under the IDEA.

Plaintiff seeks the following relief: Reversal of the Due Process Order; a declaration that the Order was erroneous; a declaration that Plaintiff was denied a free appropriate public education during the statutory time period; Order the DESE to install audio/video monitoring of all classrooms and hallways at the State School for the Severely Handicapped, including Mapaville; an injunction against DESE from operating State Schools for the Severely Handicapped and an order that Plaintiff be placed back in his school district; an order that DESE pay for compensatory educational services; reimbursement of reasonable attorney's fees and costs incurred; and actual damages.

## Legal Standard

When ruling on a motion to dismiss for failure to state a claim, the Court must accept as true all factual allegations in the complaint and view them in the light most favorable to the plaintiff. Fed.R.Civ.P. 12(b)(6); *Erickson v. Pardus*, 551 U.S. 89 (2007). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). To avoid dismissal for failure to state a claim, the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Erickson*, 551 U.S. at 93. Although the specific facts are not necessary, Plaintiff must allege facts sufficient to give fair notice of what the claim is and the grounds upon which it rests. *Id*.

Rule 12(b)(1) requires dismissal if the court lacks subject matter jurisdiction. Fed.R.Civ.P. 12(b)(1). A district court has subject matter jurisdiction in civil actions arising under the laws of the United States. 28 U.S.C. § 1331.

## Discussion

**Standing**

The United States Constitution vests federal courts with jurisdiction over federal questions only if there is a "case" or "controversy." Article III, § 2; *Raines v. Byrd*, 521 U.S. 811, 818 (1997). One element of the case or controversy

requirement is that the plaintiff must establish he has standing to sue. *Id.* "To establish standing, a party must, at a minimum, have suffered an 'injury-in-fact,' fairly traceable to the defendant's conduct, which is likely to be redressed by a favorable decision." *Johnson v. Missouri*, 142 F.3d 1087, 1088 (8th Cir. 1998). "An 'injury-in-fact' is an actual or imminent invasion of a legally protected interest, which is both concrete and particularized" to the party seeking relief. *Id*

State Defendants argue that Plaintiff attempts to seek relief for "systemic inadequacies" which affect "students" at Mapaville. State Defendants argue that Plaintiff lacks standing to assert claims based on the treatment of others. Plaintiff replies that, although his claims do address the sweeping problems at Mapaville, he alleges these facts not to seek relief for others, but as support for his claims.

In Count I, Plaintiff. appeals the due process order that granted the Motion for Summary Judgment which concluded installation of audio/visual monitoring was never appropriate. Plaintiff does not appeal any orders affecting other students. His claims relate solely to his due process hearing and his alleged denial of a free appropriate public education. Similarly, in Count IV, Plaintiff seeks relief for Defendants' unequal treatment of him on the basis of his disability and not for Defendants' treatment of others. Therefore, Plaintiff does not lack standing to pursue Counts I and IV on the basis that he seeks relief for injuries to others.

In Counts II and III, Plaintiff seeks audio and video surveillance, or some other independent monitoring scheme, "to ensure that students receive proper care or education" under § 504 of the Rehabilitation Act and the ADA because Defendants do not have an adequate supervisory apparatus in place. Plaintiff claims that Defendants' inadequate supervision, gross misjudgment, profound incompetence and neglect have denied Plaintiff the reasonable accommodations necessary for him to receive the full benefits of, and excluded him from participation in, his public education program. He also claims Defendants have subjected him to intentional discrimination with respect to his public education program.

As a general rule, a party may not assert "the rights or legal interests of others in order to obtain relief from injury to themselves." *Johnson*, 142 F.3d at 1090. To the extent that Plaintiff seeks relief to "ensure that students receive proper care or education," Plaintiff may not seek relief based on the injuries to other students. However, Plaintiff may seek relief for the effect of Defendants' refusal to implement monitoring or surveillance on his own education .

State Defendants also argue that Plaintiff lacks standing to seek declaratory and injunctive relief based on his injuries during previous school years because he has not demonstrated the threat of ongoing or future harm. Plaintiff argues that he has alleged a real threat that he will be harmed again.

To establish standing, Plaintiff must show that he has suffered an injury in fact, that State Defendants caused the injury, and that a favorable ruling can redress his injury. *Park v. Forest Serv.*, 205 F.3d 1034, 1037 (8th Cir.2000). "In the case of complaints for injunctive relief, the 'injury in fact' element of standing requires a showing that the plaintiff faces a threat of ongoing or future harm." *Id*. Past wrongs are evidence of "whether there is a real and immediate threat of repeated injury." *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983). But to have standing, the plaintiff must show a "real and immediate threat that [he] would again suffer similar injury in the future." *Park*, 205 F.3d at 1037.

In *Park*, the Eighth Circuit held that the plaintiff lacked standing to seek injunctive relief based on her past exposure to unconstitutional checkpoints. *Id*. at 1037-38. The Court identified two criteria for analyzing the likelihood of future injury: the probability that the plaintiff would be stopped again and the probability that the defendants would again use an unconstitutional checkpoint. *Id*. at 1038. In assessing the probability that the defendants would again use an unconstitutional checkpoint, the Court discussed the record and noted that "among the relevant considerations in this regard are statements of future intent and patterns of past practice." *Id*.

In this case, Plaintiff alleges past patterns of practice that have denied him

access to a free appropriate public education. He also alleges ongoing discrimination in education on the basis of his disability. The parties have not yet conducted any discovery. The record contains no evidence regarding the future intent of State Defendants or anything that would indicate one way or the other the probability that State Defendants will continue to deny Plaintiff a free appropriate public education or discriminate against him. Because the Court must assume the facts as alleged in a motion to dismiss, it is premature to determine whether Plaintiff lacks standing to pursue injunctive relief. As a result, State Defendants' motion to dismiss for lack of subject matter jurisdiction is denied without prejudice.

**Multiple State Defendants**

The three moving State Defendants claim that Plaintiff cannot sue each of the State Defendants because they are a single entity, namely, the State of Missouri, Missouri Department of Elementary and Secondary Education, supervised by the State Board of Education, which runs the program of the State Schools for the Severely Handicapped. State Defendants also claim that the State Board cannot be subject to suit.

State Defendants argue that nothing in the Missouri statutes provides that the State Board of Education is an entity subject to suit. Missouri courts, including the Supreme Court of Missouri, allow lawsuits against the State Board. See, e.g., *Bd. of*

*Educ. of City of St. Louis v. Missouri State Bd. of Educ.*, 271 S.W.3d 1 (Mo.2008).
Because state law permits lawsuits against the State Board, the suit against the State
Board cannot be dismissed on this basis.

The Department of Elementary and Secondary Education is the administrative
arm of the Missouri State Board of Education. Mo.Rev.Stat. § 161.020; 5 CSR
1-1.010.  Because the DESE is simply a part of the State Board, State Defendants
argue that it cannot be sued as a separate entity from the State Board.  The Court,
however, notes two decisions of the Missouri Supreme Court where the State Board
and the DESE were sued in the same action, e.g., *Bd. of Educ. of City of St. Louis v.
Missouri State Bd. of Educ., Comm'r of Educ.*, *and Missouri Dept't of Elementary
& Secondary Educ.*, 271 S.W.3d 1 (Mo.2008); *McEuen v. Missouri State Bd. of
Educ. and Missouri Dep't of Elementary & Secondary Educ.*, 120 S.W.3d 207
(Mo.2003).  Because state law permits lawsuits against both defendants, the DESE
cannot be dismissed on this basis.

State Defendants contend that State Schools for the Severely Handicapped
cannot be sued as an independent entity because it is "not an entity, per se; rather, it
is a program established by the State Board of Education to provide educational
services for severely handicapped children."

In some areas of Missouri, local special school districts provide special

education.  Mo.Rev.Stat. § 162.825.  Where a special school district exists, local boards of education and governing councils are charged with managing the schools and programs within the district. Mo.Rev.Stat. §§ 162.855; 162.856; 162.857. However, because not all areas of Missouri benefit from a local special school district, Missouri statute requires the State Board of Education to establish State Schools for the Severely Handicapped, now known as the Missouri Schools for the Severely Disabled, to provide those same services. Mo.Rev.Stat. § 162.730.

State Schools is a system of day school services established to serve "students with severe disabilities referred to the State Board of Education by local school districts which do not operate such programs themselves and which are not a part of special school districts."  5 CSR 70-742.140, incorporating by reference the State Plan, Regulations Implementing Part B of the Individuals with Disabilities Education Act, (rev.2007), Chapter X, p. 144.  The school Plaintiff  attends, Mapaville, is not part of a locally operated special school district.  Instead, it is part of the State Schools, which are administered by the State Board.  The administrative arm of the State Board, the DESE operates three state-school programs for children with disabilities: the State Schools for the Severely Handicapped, the Missouri School for the Deaf, and the Missouri School for the Blind.  *Missouri Dep't of Elementary and Secondary Educ. v. Springfield R-12 Sch. Dist.*, 358 F.3d 992, 995

n. 1 (8th Cir.2004).

State programs operated by the State Board are separate entities for purposes of lawsuits. See, e.g., *Strawn v. Missouri State Bd. of Educ.*, 210 F.3d 954 (8th Cir.2000). In *Strawn*, a student named the State Board, the DESE, and the State Schools as defendants. *Id.* Similarly, in *Springfield R-12*, the DESE and its program, the Missouri School for the Blind were party-plaintiffs. 358 F.3d 992. Although State Schools is a program, it has engaged in litigation both as a party-plaintiff and as a party-defendant. The suit against State Schools cannot be dismissed simply because State Schools is a program established by the State Board.

**Failure to State a Claim**

State Defendants also argue that Plaintiff has failed to state a claim under IDEA, ADA or the Equal Protection Clause of the Constitution.

**Individuals with Disabilities Education Act**

State Defendants contend that the relief Plaintiff seeks, namely audiovisual surveillance and compensatory damages, is not available under the IDEA. Plaintiff states that his IDEA claim seeks only audiovisual surveillance and compensatory education services, as opposed to tort-like monetary damages. For this reason, Plaintiff seeks damages through the other counts of his complaint.

Congress enacted the Individuals with Disabilities Education Act "to assure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living."  20 U.S.C. § 1400(d)(1)(A).  To further this end, states that agree to provide disabled children with special education and "related services" qualify for federal financial assistance.  20 U.S.C. § 1412.  A team of professionals "must develop a specialized course of instruction, known as an individualized education program, or 'IEP,' for each disabled student, taking into account that child's capabilities."  *Neosho R-IV Sch. Dist. v. Clark*, 315 F.3d 1022, 1026 (8th Cir.2003).

When an aggrieved party challenges an IEP as insufficient under the IDEA, a court must ensure that (1) the state complied with the procedures set forth in the Act; and (2) the IEP is "reasonably calculated to enable the child to receive educational benefits."  *Id*. at 1026-27.  To prevail on a claim challenging the implementation of an IEP, the aggrieved party "must show more than a *de minimis* failure to implement all elements of that IEP, and instead, must demonstrate that the school board or other authorities failed to implement substantial or significant provisions of the IEP."  *Houston Indep. Sch. Dist. v. Bobby R.*, 200 F.3d 341, 349

(5th Cir.2000); *Neosho*, 315 F.3d at 1027 n. 3. Plaintiff claims that Defendants failed to implement necessary and critical components of his educational program and therefore he did not receive a free appropriate public education.

Plaintiff petitions this Court to order the DESE to install 24-hour audio and video surveillance, or some other independent monitoring scheme, in all classrooms and hallways at State Schools, including Mapaville. Plaintiff makes this request through his appeal of the Hearing Panel's Due Process Order granting summary judgment finding that surveillance was categorically not required.

Plaintiff argues that audiovisual monitoring is available as a traditional equitable remedy under the IDEA. The IDEA permits a court to "grant such relief as the court deems is appropriate." 20 U.S.C. § 1414(i)(2)(C)(iii). "The ordinary meaning of these words confers broad discretion on the court." *Sch. Comm. of Town of Burlington v. Dep't of Educ.*, 471 U.S. 359, 369 (1996). The IDEA does not specify the type of relief available except that it must be "appropriate" in light of the purpose of the IDEA. *Id*. As noted above, the IDEA's purpose is to provide disabled children with "a free appropriate public education which emphasizes special education and related services designed to meet their unique needs." *Id*. Therefore, this Court may order audiovisual monitoring of Plaintiff if the monitoring assists in providing Plaintiff with special education and related services.

The IDEA requires states to provide disabled children with "special education" and "related services." *Cedar Rapids Cmty. Sch. Dist. v. Garrett F.*, 526 U.S. 66, 68 (1999). Clearly, audiovisual surveillance for the purpose of parental monitoring is not an educational service, and Plaintiff does not argue it is. Rather, Plaintiff claims that "related services" broadly encompasses a number of supportive services, including audiovisual monitoring.

Under the IDEA,

> The term 'related services' means transportation, and such developmental, corrective, and other supportive services (including speech-language pathology and audiology services, interpreting services, psychological services, physical and occupational therapy, recreation, including therapeutic recreation, social work services, school nurse services designed to enable a child with a disability to receive a free appropriate public education as described in the individualized education program of the child, counseling services, including rehabilitation counseling, orientation and mobility services, and medical services, except that such medical services shall be for diagnostic and evaluation purposes only) as may be required to assist a child with a disability to benefit from special education, and includes the early identification and assessment of disabling conditions in children.

20 U.S.C. § 1401(26)(A). The parenthetical phrase lists examples of supportive services covered by the IDEA. *Cedar Rapids*, 526 U.S. at 73. Each example is a service provided to the child. The list is nonexhaustive; the definition of "related services" "broadly encompasses those supportive services that may be required to

assist a child with a disability to benefit from special education." Id. at 73. The issue, then, is whether the requested audiovisual surveillance may be required to assist Plaintiff to benefit from special education.

Plaintiff states that he seeks the installation of audiovisual surveillance in public areas of the school, accompanied with a monitoring room equipped with a live feed and supportive personnel, for the purpose of observing Plaintiff's education and monitoring his safety. Plaintiff states its purpose is to ensure public oversight and to ensure that he receives the services required by his IEP. No discovery has yet been conducted. Based on the record, the Court cannot conclude as a matter of law that the requested surveillance would not provide Plaintiff with a service calculated to assist him in receiving special education. Therefore, State Defendants' motion to dismiss Plaintiff's claim for relief by installing audiovisual surveillance is denied.

State Defendants argue that Plaintiff may not seek compensatory damages under the IDEA. Plaintiff responds that he does not seek compensatory damages, but instead seeks compensatory educational services. Under the IDEA, a court may order compensatory education services. *Birmingham v. Omaha Sch. Dist.*, 220 F.3d 850, 856 (8th Cir.2000). If Plaintiff prevails on his claim that Defendants denied him a free appropriate education, he may recover compensatory educational services.

*Miener v. State*, 800 F.2d 749, 754 (8th Cir.1986). As a result, State Defendants' motion to dismiss Plaintiff's IDEA claim in Count I will be denied.

**Rehabilitation Act**

Congress enacted the Rehabilitation Act, in part, to promote the inclusion and integration of persons with disabilities into mainstream society. See 29 U.S.C. § 701(a). To accomplish this, § 504 of the Rehabilitation Act provides:

> No otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance....

29 U.S.C. § 794(a). The Rehabilitation Act and the IDEA complement each other. Whereas the IDEA imposes an affirmative duty on recipients of federal funds to provide a free appropriate education for disabled children, the Rehabilitation Act prohibits certain conduct on the part of recipients of federal assistance. *Monahan v. Nebraska*, 687 F.2d 1164, 1170 (8th Cir.1982). Specifically, recipients of federal aid cannot discriminate against individuals based on their disabilities. *Id.*; *M.Y. v. Special Sch. Dist.*, 544 F.3d 885, 888 (8th Cir.2008).

"To state a prima facie case under section 504, a plaintiff must show that he or she (1) is a qualified individual with a disability; (2) was denied the benefits of a program or activity of a public entity receiving federal funds; and (3) was

discriminated against based on her disability." *M.Y.*, 544 F.3d at 888. A plaintiff must also "show that the discrimination reflected bad faith or gross misjudgment." *Id*.

Plaintiff claims that Defendants have discriminated against him by (1) denying him reasonable accommodations which would allow him to receive the full benefits of his school program; (2) excluding him from participating in and denying the benefits of a public education program; (3) failing to provide necessary oversight, accommodations, training, and other measures; (4) refusing to implement audiovisual monitoring; (5) a pattern and practice of inadequate funding of State Schools, including Mapaville; (6) excluding Plaintiff from the District and placing him in the State School program which suffers systemic infirmities; and (7) failing to provide him with a free appropriate education. State Defendants move to dismiss on two bases: (1) Plaintiff has not adequately identified the provision of § 504 under which he seeks relief; and (2) Plaintiff's claims relating to audiovisual monitoring fail to state a claim upon which relief can be granted.

State Defendants argue that because Plaintiff alleges a violation of § 504 of the Rehabilitation Act and does not specifically cite to the U.S.Code, Plaintiff should be required to allege the specific provisions of the Rehabilitation Act under which he seeks relief. Section 504 of the Rehabilitation Act, codified at 29 U.S.C. §

794, contains only one paragraph prohibiting any conduct: section 504(a).  The

other provisions of § 504 do not prohibit any conduct and therefore are not capable

of being violated.  Section 504(b) lists definitions.  Section 504(c) provides an

exemption for small providers.  Section 504(d) identifies the standards used to

determine whether a violation has occurred.  Because Plaintiff's reference to § 504

can only refer to a violation of § 504(a), codified at 29 U.S.C. § 794(a), the Court

will not dismiss the Rehabilitation Act claim on this basis.

State Defendants also argue that Plaintiff has failed to state a claim to the

extent his argument is based on their refusal to implement audiovisual monitoring

and/or surveillance.  Plaintiff asserts that audiovisual monitoring is a reasonable

accommodation because he unable to vocalize neglect, abuse and the denial of a

free and appropriate education.

The Eighth Circuit "has not held one way or the other on whether a failure to

provide a reasonable accommodation may constitute discrimination on the basis of

one's disability under section 504."  *M.Y.*, 544 F.3d at 889; *Davis v. Francis

Howell Sch. Dist.*, 138 F.3d 754, 757 (8th Cir.1998) (stating "[t]his court has not

determined whether the failure to make reasonable modifications in a policy is itself

discrimination even where the policy and its rationale cannot be shown to be

discriminatory.").  State Defendants do not provide any authority in support of their

argument that the Rehabilitation Act does not permit the installation of video cameras as an accommodation. Therefore, State Defendants' motion to dismiss the Rehabilitation Act claim will be denied without prejudice.

**Americans with Disabilities Act**

Congress enacted the Americans with Disabilities Act ("ADA"), in part, "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). The ADA consists of four titles. Each of the separate titles focuses on

> separate types of conduct: Title I prohibits discrimination in employment against qualified individuals with disabilities. See 42 U.S.C. § 12112. Title II prohibits "public entities" from excluding disabled individuals from or denying them the benefits of programs, activities, or services, and from otherwise discriminating against them. See 42 U.S.C. § 12132. Title III prohibits discrimination or the denial of "full and equal enjoyment" of goods, services, and other benefits provided by "places of public accommodation" operated by private entities. See 42 U.S.C. §§ 12181(6), (7), 12182.

*Klingler v. Dep't of Revenue*, 433 F.3d 1078, 1080 (8th Cir.2006). Title IV contains various miscellaneous provisions. 42 U.S.C. § 12201, et seq. Title IV's only prohibition relates to retaliation, coercion, and intimidation. 42 U.S.C. § 12203.

Plaintiff claims that Defendants have discriminated against him in violation of the ADA by (1) denying him reasonable accommodations to allow him to receive

the full benefits of his school program; (2) excluding him from participating in and denying the benefits of a public education program; (3) failing to provide necessary oversight, accommodations, training, and other measures; and (4) refusing to implement audiovisual monitoring. State Defendants move to dismiss on three bases: (1) Plaintiff has not adequately identified under which title of the ADA he seeks relief; (2) the denial of a free and appropriate education, inadequate monitoring of schools and the need for 24-hour audiovisual surveillance are not the type of wrongs that Title II was designed to address; and (3) the Eleventh Amendment bars Plaintiff from seeking monetary damages under the ADA.

State Defendants argue that because Plaintiff alleges a violation of the ADA and does not identify which Title, Plaintiff should be required to allege the specific section of the ADA under which he seeks relief. As discussed above, the ADA's various titles apply to different types of discrimination. Title I applies to employment discrimination. Title III applies to discrimination in places of public accommodation. Title II applies to discrimination by public entities.

Title II of the ADA provides, in relevant part, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits if the services, programs, or activities of a public entity, or be

subjected to discrimination by any such entity." 42 U.S.C. § 12132. In a school case, the plaintiff must also allege bad faith or gross negligence. *Hoekstra v. Ind. Sch. Dist., No. 283*, 103 F.3d 624, 626-27 (8th Cir.1996); *Thompson v. Bd. of Special Sch. Dist., No. 1*, 144 F.3d 574, 580 (8th Cir.1998).

The ADA defines "public entity" as "(A) any State or local government; (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and (C) the National Railroad Passenger Corporation, and any commuter authority...." 42 U.S.C. § 12131(1). "It is plain that Missouri qualified as a 'public entity' for purposes of the ADA and that as a result it is bound by Title II of the Act." *Klingler*, 433 F.3d at 1080. The Missouri State Board of Education and its component agencies also qualify as public entities for purposes of the ADA and are thereby bound by Title II. Because Plaintiff's claim against the State of Missouri can fall only under Title II of the ADA and State Defendants reference Title II as the proper section in their own memorandum, the Court will not dismiss Plaintiff's ADA claim for failing to specify that he seeks relief under Title II of the ADA.

State Defendants also argue that Plaintiff's ADA claim should be dismissed because the denial of a free and appropriate education, inadequate monitoring of schools and the need for 24-hour audiovisual surveillance are not the type of wrongs

that Title II was designed to address. State Defendants have provided no argument or authority regarding why Plaintiff has failed to state a claim. State Defendants' entire argument is "[t]he allegations of Count III do not allege the elements of a Title II claim. Plaintiff only reiterates his IDEA allegations ... These are not the types of wrongs that Title II was designed to address." State Defendants have not offered an explanation of what element Plaintiff's Title II claim lacks or an explanation of why the wrongs Plaintiff has alleged are not redressible by Title II of the ADA. Absent any argument or authority, the Court will not dismiss Plaintiff's claim on the record before the Court.

State Defendants argue that Eleventh Amendment sovereign immunity shields them from claims for money damages. The ADA was enacted with a provision purporting to abrogate eleventh amendment sovereign immunity. 42 U.S.C. § 12202 ("A State shall not be immune under the eleventh amendment to the Constitution of the United States from an action ... for a violation of this chapter."). The Supreme Court upheld 42 U.S.C. § 12202's abrogation of state sovereign immunity in certain circumstances. *United States v. Georgia*, 546 U.S. 151, 159 (2006). The Supreme Court explained "[t]hus, insofar as Title II creates a private cause of action for damages against the States for conduct that actually violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity." *Id*. Conversely,

to the extent the State's conduct does not violate the Fourteenth Amendment, it is immune from money damages. Cf. *id*. Thus, the sovereign immunity determination must be made on a claim-by-claim basis. *Klingler,* 455 F.3d at 891-92.

Disparate treatment based on disability implicates the equal protection clause of the Fourteenth Amendment. *Id*. at 894. Because disability is not a suspect class, disparate treatment on the basis of disability is subject to rational basis review. *Id*. In this case, Plaintiff alleges that State Defendants have discriminated against him on the basis of his disability. If State Defendants' actions were to fail rational basis review, Plaintiff would be able to seek money damages on his ADA claim. No discovery has occurred and neither side has briefed the issue regarding whether the claimed disparate treatment survives rational basis review. It is therefore premature to determine whether Plaintiff may seek money damages from State Defendants on his ADA claim.

**Section 1983 Equal Protection Claim**

Plaintiff alleges, among other things, that he "received intentionally different treatment from other similarly situated individuals" because Defendants failed to provide the same resources and training to students at State Schools that disabled students in school districts receive. Plaintiff also alleges that State Defendants have excluded him from the school district and placed him in a State School on the basis

of his disability. State Defendants move to dismiss on several bases, including that a state agency is not "a person" subject to suit under 42 U.S.C. § 1983.[3] Plaintiff does not address this argument, but responds that he has stated a valid claim for declaratory relief.

42 U.S.C. § 1983 provides, "[e]very person who, under color of [law] causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable...." "Section 1983 provides a cause of action against 'persons' only." *Barket, Levy & Fine, Inc. v. St. Louis Thermal Energy Corp.*, 948 F.2d 1084, 1086 (8 th Cir.1991). A state is not "a person" under § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64, 71, (1989). A suit against a state Board of Education or Departments of Education is also an action against the state. Cf. *Robinson v. Kansas*, 295 F.3d 1183, 1191 (10th Cir.2002) (concluding the chairperson of the state Board of Education was a state official). Consequently, Plaintiff cannot bring claims against State Defendants under § 1983. In light of the Supreme Court's clear statement that states are not persons for

_____

[3] State Defendants also move to dismiss because (1) the Eleventh Amendment bars this suit; (2) Plaintiff cannot seek damages from State Defendants on the theory of *respondeat superior*; (3) the Rehabilitation Act and ADA preempt Plaintiff's § 1983 claims; and (4)Plaintiff has failed to allege that State Defendants treated him differently than they treated similarly situated individuals.

purposes of § 1983, the Court need not address State Defendants' other bases for dismissal of the § 1983 Equal Protection Claim.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants Missouri State Board of Education, Missouri Department of Elementary and Secondary Education, and State Schools for the Severely Handicapped's motion to dismiss [Doc. No. 9] is granted in part and denied in part. Defendants' motion is denied as to Counts I, II and III. Defendants' motion is granted as to Count IV.

**IT IS FURTHER ORDERED** that Defendant's alternative motion for more definite statement is **DENIED.**

Dated this 8th day of September, 2009.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE